# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 18-1305V
UNPUBLISHED

| | |
|---|---|
| SUSAN ANN KUHN,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: April 15, 2020<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset; Influenza<br>(Flu) Vaccine; Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA) |

*Leah Durant*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.

*Sarah Christina Duncan*, U.S. Department of Justice, Washington, DC, for Respondent.

## FINDINGS OF FACT[1]

On August 28, 2018, Susan Ann Kuhn filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to her left shoulder on September 19, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find the onset of Petitioner's shoulder injury related to vaccine administration ("SIRVA") occurred within 48 hours of vaccination.

## I.     Relevant Procedural History

Ms. Kuhn filed her petition for compensation on August 28, 2018. (ECF No. 1). By November 2018, she had filed all her relevant medical records and a Statement of Completion. (ECF Nos. 7-8, 10,12-12). After reviewing the medical records, Respondent filed a status report stating that he was not amenable to engaging in settlement discussions and requested until August 8, 2019 to file his report pursuant to Vaccine Rule 4(c). (ECF No. 17). This request was granted.

On August 7, 2019, Respondent filed the Rule 4(c) Report maintaining that the case was not appropriate for compensation under the terms of the Vaccine Act. Respondent's Report at 1 (ECF No. 19). Respondent argued that "[i]t is not clear that petitioner's pain began within 48-hours of vaccine administration, because petitioner inconsistently reported when her left shoulder pain began." *Id*. at 6. Respondent further argued that Petitioner does not allege in the alternative that her shoulder pain was caused-in-fact by the vaccination, and thus, cannot prove a causal link between the alleged injuries and a covered vaccine. *Id*. at 7-8.

In a Scheduling Order filed on August 7, 2019, former Chief Special Master Dorsey (who was presiding over the case at the time) ordered Petitioner to file a detailed affidavit addressing Respondent's contention that Petitioner inconsistently reported the onset of her shoulder pain. Petitioner was also ordered to file a motion for a fact ruling to resolve the onset issue (the parties were also provided the opportunity to resolve this factual issue in an alternative manner, if desired.) (ECF No. 20). Pursuant to the Scheduling Order, Petitioner subsequently submitted an additional affidavit and a Motion for Fact Ruling. Petitioner's Exhibit ("Pet. Ex.") 15; Motion for Factual Ruling (ECF No. 25). Respondent filed his response on March 13, 2020. (ECF No. 27).

The matter is now ripe for adjudication.

## II.    Issue

At issue is whether the onset of Petitioner's left shoulder pain was within 48-hours after vaccination as set forth in the Vaccine Injury Table. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination). The Table's "Qualifications and Aids to Interpretation" ("QAI") for a SIRVA-based claim also require that a petitioner's pain have occurred within this same 48-hour time frame. 42 C.F.R. § 100.3(c)(10).

### III.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition as set forth in Section 11(c)(1).  A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. § 13(b)(1).  "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events."  *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight.  *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005).  However, this rule does not always apply.  In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent."  *Lowrie*, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate."  *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist.  *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling."  *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998).  The credibility of the individual offering such testimony must also be determined.  *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.  Finding of Fact

I make the following findings after a complete review of the record to include all medical records, affidavits, Respondent's Rule 4 report, and any additional evidence filed. Specifically, I base the findings on the following evidence:

- Petitioner was administered a flu vaccine in her left shoulder on September 19, 2017.  Pet. Ex. 1 at 1.

- In her affidavit, Ms. Kuhn averred that "[o]nce it was my turn [to receive the vaccination], I was seated in a chair as the nurse administered my flu vaccination.  The administration of my vaccination was incorrectly placed very high up on my left shoulder.  Unlike flu vaccinations that I had received in previous years, the immediate pain in my shoulder was much greater than experienced with past flu vaccinations."  Pet. Ex. 9 at 1.

- On October 2, 2017, just 13 days after vaccination, Ms. Kuhn reported to her employer that she was experiencing left shoulder pain since her flu injection.  The note states "Colleague here to report that she received a flu shot from a Maxim nurse at the Healthy Pfizer screening on 9/19. Her arm has been very painful since the injection was given."  Pet. Ex. 7 at 5.

- Also on October 2, 2017, Petitioner presented to Dr. Sanford Greenhouse at Gales Ferry Medical Group. The note states that Ms. Kuhn had complaints of "left shoulder pain for 5 days… occurred after flu shot…"  Pet. Ex. 2 at 14.
    - In her affidavit, Ms. Kuhn averred that "Dr. Greenhouse had incorrectly documented that the pain had began 5 days after my flu shot."  Pet. Ex. 15

4

at 1.  She stated that, "I recall explaining to Dr. Greenhouse that the pain started immediately upon my receiving the flu vaccination at a Healthy Pfizer Screening Event where flu shots were offered to colleagues and that the pain had gotten progressively worse and had escalated in the 5 days prior to my visit… I shared with him that I had gone clothes shopping September 23-24, 2017, and I had much difficulty trying on shirts/blouses because I could not even lift my left arm. Per my documentation of my visit, Dr. Greenhouse confirmed that my pain was due to the administration of the vaccine being too high on my arm and he indicated that the person that administered the vaccine hit the deltoid tendon." *Id*.

- On October 9, 2017, Ms. Kuhn sent a follow-up email to her employer explaining that "the nurse that administered the shot had put the needle too high on my arm and hit my deltoid tendon which has caused me a great deal of pain and loss of motion in my arm as I cannot lift my arm up." Pet. Ex. 8 at 2.

- On October 10, 2017, Ms. Kuhn presented to Dr. John Hennessey at Gales Ferry Medical Group for a complaint of "continued L[eft] shoulder pain x 1mo[nth] – following flu shot that p[atien]t states was given too high on her shoulder….She had flu sh[o]t achiness and then followed by that had persistence of sho[u]lder pain… She has throb[b]ing in the upper arm that is constan[t]."  Pet. Ex. 2 at 10.

- On October 11, 2017, Ms. Kuhn presented to Dr. Emily Vafek at Orthopedic Partners.  Pet. Ex. 3 at 52.  Dr. Vafek noted "[t]he patient is a 47-year-old right-hand dominant woman with PMH of fibromyalgia that presents to clinic today for evaluation of left arm and shoulder pain. She states that this began on 9/23/2017. She feels that this is secondary to incorrect administration of a flu vaccine which she received on 9/19/2017**.** She states that several days after the flu shot administration which she felt was too high in the deltoid she began experiencing pain in the front of the left shoulder." *Id*.

    - In her affidavit, Ms. Kuhn explained that when she saw Dr. Vafek at Orthopedic Partners on October 11, 2017, she recalled "sharing with Dr. Vafek that I had received a flu shot on September 19, 2017 and that although my shoulder was painful immediately after the shot, since September 23, 2017, I began to not be able to lift my arm up and had an increased amount of pain in doing so." Pet. Ex. 15 at 2.

- On October 12, 2017, Ms. Kuhn presented to the Emergency Department ("ED") due to left arm pain. The ED note states "Flu shot injected Sept 19 "too high up" in L[eft] arm, increased pain to site since administration… Patient received an injection on September 19.  Since that time the patient has had pain along the left shoulder joint. The patient thinks that the injection was administered too [high] and have caused damage…"  Pet. Ex. 5 at 65-66.

- On October 16, 2017, Ms. Kuhn presented to Dr. Jonathan Piposar at Orthopedic Partners.  Dr. Piposar noted "This is a 47-year-old female who presents with left shoulder pain after flu shot 1 month ago."  Pet. Ex. 3 at 51.

- On October 20, 2017, Ms. Kuhn presented to Physical Therapist, Stacey Stark, at Orthopedic Partners for a follow up of her adhesive capsulitis of the left shoulder.  Pet. Ex. 3 at 46.  The note from this visits states, "P[atien]t received a flu shot on 9/19/17 in her L[eft] sh[ou]lder, a little higher up than she's used to. She had the regular amount of achiness the next day, and as the days progressed, her pain worsened as did her ROM." *Id*.  In the assessment section of this same visit, the note states "Pt. presents with L[eft] sh[ou]ld[e]r pain and severe AROM limitations, affecting her ADL's quite a bit. She notes onset of these symptoms was mid Sept. after getting a flu shot."  *Id*. at 47.

- On October 27, 2017, Petitioner presented to Physician Assistant, William Shafnacker, at Gales Ferry Medical Group for a complaint of "pain in left shoulder."  Pet. Ex. 2 at 6.  Upon examination, Petitioner was found to have "very limited ROM" of her left shoulder as compared with the right.  *Id*. at 7.

- Also on October 27, 2017, Petitioner presented to Dr. Emily Vafek at Orthopedic Partners.  Pet. Ex. 3 at 44.  It is noted that Ms. Kuhn's "left arm and shoulder pain that began on 9/23/2017.  She feels that this is secondary to incorrect administration of a flu vaccine which she received on 9/19/2017."  *Id*.

- On December 15, 2017, Ms. Kuhn presented to Dr. Jonathan Piposar at Orthopedic Partners for complaints of "left shoulder pain that developed after a flu shot."  Pet. Ex. 3 at 16.

- On January 31, 2019, Ms. Kuhn presented to her rheumatologists' office.  The note from this visit states, "Patient is complaining of left shoulder pain and has been seeing the orthopedics and is receiving Depo-Medrol injections without relief.  Patient states pain began after a flu shot."  Pet. Ex. 10 at 18.

- On June 22, 2018, Petitioner presented to Physician Assistant, Lori Ciccone, at Gales Ferry Medical Group for left shoulder pain. Pet. Ex. 2 at 56.  The note from that visit states "Here for left shoulder pain since Sept. 19, 2017. She thinks it was due to her flu shot. She complains of limitations with range of motion, she cannot lift up.  She also complains it is interrupting her sleep patterns." *Id*.

- On November 7, 2018, Ms. Kuhn presented to Orthopedic Associates for a follow-up of her complaints of pain in the left shoulder and left upper arm.  Pet. Ex. 11 at 1. The note states "Date of Onset: 09/19/2017."  *Id*.  The same history is repeated in the medical notes from Petitioner's December 14 and December 19, 2018 visits at Orthopedic Associates. Pet. Ex. 13.

I acknowledge that there are a number of medical records that place the onset of Petitioner's shoulder pain outside the 48-hour window for a Table SIRVA injury.  However, weighing the evidence under the relevant preponderance standard, I find that Petitioner has met her burden.  One of the most significant pieces of evidence is the fact that Ms. Kuhn was seen by her primary care physician for her left shoulder pain just 13 days after she was administered the flu vaccine, at which time she reported pain since the

6

vaccination itself. A contemporaneous record from the same date obtained from Petitioner's employer makes the same representation. There are also many references in the medical records (as listed above) that squarely place the onset of Ms. Kuhn's shoulder pain in the 48-hour window. And although some other records place the onset outside of this 48-hour window, Ms. Kuhn (in her affidavits) has credibly explained that the history she provided to her medical providers was inaccurately recorded, and she detailed the circumstances around those visits to explain such mistakes. Taken as a whole, I find the sworn testimony of Ms. Kuhn to be credible and in agreement with most of the contemporaneously created treatment records.

Accordingly, I find there is preponderant evidence to establish the vaccination alleged as causal in this case was administered to Petitioner in her left deltoid on September 19, 2017. Specifically, I find the onset of Petitioner's pain within 48 hours of vaccination.

## V.      Scheduling Order

Given my finding of fact regarding the onset of Ms. Kuhn's left shoulder pain, Respondent should evaluate and provide his current position regarding the merits of Petitioner's case.

**Accordingly, Respondent shall file, by no later than June 10, 2020, an amended Rule 4(c) Report reflecting Respondent's position in light of the above fact-finding.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master
